**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **GULFPORT-BRITTANY, LLC and** | § | |
| **MEREDITH APRIL MATTHEWS** | § | **PLAINTIFFS** |
| | § | |
| **v.** | § | **Civil Action No. 1:07cv1036HSO-JMR** |
| | § | |
| | § | |
| **RSUI INDEMNITY COMPANY** | § | **DEFENDANT** |

<u>**ORDER AND REASONS GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**</u>

BEFORE THE COURT is the Motion [9] of Plaintiffs Gulfport-Brittany, LLC, and Meredith April Matthews, for Partial Summary Judgment, filed on or about May 12, 2008, in the above captioned cause. Defendant RSUI Indemnity Company ("RSUI") filed an Opposition [14], and Plaintiffs filed a Rebuttal [17]. Also before the Court is the Motion [11] of Defendant RSUI, for Summary Judgment, filed on or about May 12, 2008. Plaintiffs filed an Opposition [13], and RSUI filed a Reply [16]. After consideration of the submissions, the record in this case, and the relevant legal authorities, and for the reasons discussed below, the Court finds that Defendant's Motion must be granted, and that Plaintiffs' Motion must be denied.

I. <u>BACKGROUND</u>

At all times relevant to this lawsuit, Plaintiffs were co-owners of the Brittany Apartments located in Gulfport, Mississippi. On or about August 29, 2005, Hurricane Katrina struck the Mississippi Gulf Coast, damaging the Apartments. At

that time, Heritage Properties, Inc.,[1] had in force three commercial property insurance policies covering various properties in Mississippi.  The Brittany Apartments were among those properties insured.

Aspen Insurance UK Limited ("Aspen") issued the underlying policy of insurance with occurrence limits of $5,000,000.00, and Certain Underwriters of Lloyd's ("Lloyd's") issued the first layer of excess coverage, also with policy limits of $5,000,000.00 per occurrence.  RSUI provided the uppermost layer of excess coverage with policy limits of $140,000,000.00.

Plaintiffs allege that as a result of the damage caused by Hurricane Katrina, they have suffered physical damage to their property, loss of business income, and costs necessarily incurred to comply with ordinances and/or laws associated with the demolition and rebuilding of the Apartments.  Heritage Properties submitted claims to all three insurers on behalf of Plaintiffs.  Aspen and Lloyds each paid their respective policy limits of $5,000,000.00.  RSUI paid $2,458,014.00, but denied liability for any further payments.

In their respective Motions, both parties seek a declaration from this Court regarding the extent of coverage owed under the RSUI policy for damage sustained

---

[1]At all times relevant to this lawsuit, Heritage Properties, Inc., was a management company for Brittany Apartments.  *See* Agreed Stipulation [18]. Heritage Properties had no ownership interest in Brittany Apartments and the parties have stipulated, and the Court so finds, that it is not an indispensable party in this lawsuit.  *See id*.

by the Brittany Apartments as a result of Hurricane Katrina.[2]  RSUI contends that an unambiguous reading of the policy limits its exposure on the Brittany Apartments to a scheduled sub-limit of $2,458,014.00 per loss, as stated on the last Statement of Values on file with the company.  Plaintiffs maintain that the unambiguous terms of the policy limit RSUI's exposure on the Brittany Apartments to $140,000,000.00 per loss.  Plaintiffs also contend that RSUI is bound by the Ordinance and Law Coverage endorsement found in the underlying Aspen policy, which they allege provides coverage of $2,500,000.00.

## II.  DISCUSSION

### A.   Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states that the judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56.  The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *See Booth*

---

[2]As discussed in subpart "E" *infra*, RSUI also seeks costs and attorney's fees.

*v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543 (S.D. Miss. 1999).  With regard to

"materiality," only those disputes of fact that might affect the outcome of the lawsuit

under the governing substantive law will preclude summary judgment.  *See id.*

(*citing Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)).

Where "the summary judgment evidence establishes that one of the essential

elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all

other contested issues of fact are rendered immaterial."  *Id.* (*quoting Topalian v.*

*Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1987)).

To rebut a properly supported motion for summary judgment, the opposing

party must present significant probative evidence, since "there is no issue for trial

unless there is sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party."  *Shields v. Twiss,* 389 F.3d 142,149-50 (5th Cir. 2004)

(*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  If the evidence is

merely colorable, or is not significantly probative, summary judgment is appropriate.

*See Anderson*, 477 U.S. at 249.  The nonmovant may not rely on mere denials of

material facts, nor on unsworn allegations in the pleadings or arguments and

assertions in briefs or legal memoranda.  *See Gaddis v. Smith & Nephew, Inc.,* 534

F. Supp. 2d 697, 699 (S.D. Miss. 2008).

B.    Applicable Law

Because this is a case of diversity jurisdiction, the Court must apply state

substantive law.  *See Krieser v. Hobbs*, 166 F.3d 736, 739 (5th Cir. 1999); *Erie R. Co.*

*v. Tompkins*, 304 U.S. 64, 79-80 (1938).  The law of the forum state applies unless

some other state has a more significant relationship to the occurrence or to the parties. *See Nationwide General Ins. Co. v. Perry*, 2 F. Supp. 2d 857, 860 (S.D. Miss. 1997). Neither party disputes that Mississippi law controls here.

C.    Extent of RSUI's Liability Under the RSUI Policy

The RSUI policy contains a Scheduled Limit of Liability endorsement stating that:

1.    In the event of loss hereunder, liability of the Company shall be limited to the least of the following in any one "occurrence":

a.    The actual adjusted amount of the loss, less applicable deductibles and primary and underlying excess limits;

b.    100% of the individually stated value for each scheduled item of property insured at the location which had the loss as shown on the latest Statement of Values on file with this Company, less applicable deductibles and primary and underlying excess limits. If no value is shown for a scheduled item then there is no coverage for that item; or

c.    The Limit of Liability as shown on the Declarations page of this policy or as endorsed to this policy.

2.    Coverage under this policy is provided only at the locations listed on the latest Statement of Values on file with this Company or as endorsed on to this policy.

3.    The premium for this policy is based upon the Statement of Values on file with this Company or attached to this policy.

The term "occurrence", where used in this policy, shall mean any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event.

RSUI Policy at Scheduled Limit of Liability (Form RSG 94060 1004), attached as Ex. "E" to Def.'s Mot.

Though Mississippi courts have not addressed this specific issue, courts in

other jurisdictions have determined that where a policy contains a scheduled limit of liability endorsement, and the description of the premises is listed as per schedule on file with the company, a scheduled–rather than blanket–policy is created, and the insurer's liability as to that particular property is limited to the value shown on the statement of values on file with the company.[3]  *See Knowlton Specialty Papers, Inc. v. Royal Surplus Lines Ins. Co.*, No. 03-cv-705 (N.D. N.Y. 2003), *available at* 18-2 Mealey's Litig. Rep. Ins. 7 (2003), *aff'd*, 112 Fed. App'x 121 (2d Cir. 2004); *see also Reliance Nat'l Indemnity Co. v. Lexington Ins. Co.*, No. 01 C 3369, 2002 WL 31409576, at * 8 (N.D. Ill. 2002)(examining a nearly identical scheduled limit of liability endorsement and finding that "[b]ecause the Lexington Policy separately scheduled different items of property [on its Statement of Values on file with the Company], it is a scheduled policy with specific limits for particular items and not a blanket coverage policy."); *Fair Grounds Corp. v. Travelers Indemnity Company of Illinois*, 742 So. 2d 1069, 1071 (La. Ct. App. 1999)(examining a nearly identical scheduled limit of liability endorsement and stating "[i]t is undisputed here that the above references to 'statements of values on file with us' mean that these were scheduled, rather than blanket, policies."); *Anderson Mattress Company, Inc. v. First State Ins. Co.*, 617 N.E.2d 932, 935-38 (Ind. Ct. App. 1993).  While not controlling, the Court finds these authorities persuasive.  Plaintiffs do not cite any contrary

---

[3]A scheduled policy states coverage limits for each insured property while a blanket policy allocates an overall limit to the policy.  *See First Centrum Corp. v. Landmark*, No. 06-1854, 2007 WL 1800592, at * 801-02 (4th Cir. 2007).

authority which interprets similar endorsements as blanket policies.  Instead, they argue that the RSUI policy as a whole is ambiguous and, pursuant to Mississippi contract law, should be construed as a blanket policy in favor of the insured.

Specifically, Plaintiffs contend that the Excess Physical Damage Schedule ("Damage Schedule") and the Excess Physical Damage Coverage Form ("Coverage Form") found in the RSUI policy are in direct conflict with the Scheduled Limit of Liability endorsement.  *See* Pls.' Opp'n to Def.'s Mot. at p. 11.  Read together, Plaintiffs assert that the Damage Schedule and the Coverage Form afford them coverage of $140,000,000.00 per loss as to each individual property covered by the policy.

The "Insuring Clause" on the Coverage Form states that:

Subject to the limitations, terms and conditions contained in this Policy or added hereto, the Company agrees to indemnify the Insured named in the schedule herein in respect of direct physical loss or damage to the property described in the schedule while located or contained as described in the schedule, occurring during the period stated in the schedule and caused by any of such perils as are set forth in Item 3 of the schedule and which are also covered by and defined in the policy(ies) specified in the schedule and issued by the "Primary Insurer(s)" stated therein.

RSUI Policy at Excess Physical Damage Coverage Form (Form RSG 91002 0304), attached as Ex. "E" to Def.'s Mot.

The "Limit" clause on the Coverage Form states that:

Provided always that liability attaches to the Company only after the primary and underlying excess insurer(s) have paid or have admitted liability for the full amount of their respective ultimate net loss liability as set forth in Item 6 of the schedule and designated "Primary and Underlying Excess Limit(s)" and then the limits of the Company's liability shall be those set forth in Item 7 under the designation "Limit Insured" and the Company shall be liable to pay the ultimate net loss up

to the full amount of such "Limit Insured."

*Id.*

Plaintiffs assert, and RSUI does not contest, that the term "schedule" in the
Coverage Form refers to the Damage Schedule.  Item 7 of the Damage Schedule
identifies policy limits of $140,000,000.00 per occurrence, without reference to any
Statement of Values or sub-limits for individual properties.  Plaintiffs contend that
the Coverage Form and Damage Schedule, read together, expand RSUI's liability to
$140,000,000.00 per occurrence for any individual property covered by the policy,
including the Brittany Apartments.  *See id.* at Excess Physical Damage Schedule
(Form RSC 94062 0304).  Plaintiffs support their position by asserting that neither
the Coverage Form nor the Damage Schedule mention the Scheduled Limit of
Liability endorsement.  The Court is not persuaded by this argument.

The interpretation of an insurance policy presents a question of law for the
Court to decide.  *See Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419, 429 (5th
Cir. 2007); *see also Progressive Gulf Ins. Co. v. Dickerson and Bowen, Inc.*, 965 So. 2d
1050, 1054 (Miss. 2007).  Under Mississippi law, insurance policies are to be
interpreted under the rules of construction generally applicable to written contracts,
and must be enforced as written where they are clear and unambiguous.  *See
Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No.
1:07cv568, 2008 WL 2699775, at * 2 (S.D. Miss. July 2, 2008)*(citing Farmland
Mutual Insurance Co. v. Scruggs*, 886 So. 2d 714, 717 (Miss. 2004)).  A contract for
insurance is to be read as a whole, giving effect to all of its provisions.  *See

-8-

*Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382 (5th Cir.
1998)(applying Mississippi rules for construction of insurance policies).  In so doing,
"[a]ll parts [of a policy] must be harmonized as much as reasonably possible, and no
part or word can be stricken unless the result is fairly inescapable." *Mississippi
Farm Bureau Mut. Ins. Co. v. Walters*, 908 So. 2d 765, 769 (Miss. 2005).  Where,
however, the policy's terms are ambiguous, such ambiguity is to be resolved in favor
of the insured and against the insurer who drafted the contract. *See Centennial*, 149
F.3d at 382-83.

Plaintiffs' argument ignores specific provisions in the policy that clearly limit
RSUI's exposure, and which permit the policy's provisions to be logically reconciled
and read together.  The "Insuring Clause" in the Coverage Form, on which Plaintiffs
rely, clearly makes indemnification to the insured "[s]ubject to the limitations, terms
and conditions contained in this Policy or added hereto...."  RSUI Policy at Excess
Physical Damage Coverage Form (Form RSG 91002 0304), attached as Ex. "E" to
Def.'s Mot.  As outlined *supra*, RSUI has unambiguously limited its liability in the
Scheduled Limit of Liability endorsement to "...100% of the individually stated value
for each scheduled item of property insured at the location which had the loss as
shown on the latest Statement of Values on file with [RSUI]...."  *Id.* at Scheduled
Limit of Liability (Form RSG 94060 1004).  Because the "Insuring Clause" in the
Coverage Form stipulates that it is subject to limitations contained in the policy, and
the Scheduled Limit of Liability contains such limitations, the Coverage Form need
not specifically reference the Scheduled Limit of Liability in order for the scheduled

-9-

limit to apply.  Furthermore, the RSUI Declarations Page identifies Form RSG 94060 1004, the Scheduled Limit of Liability, as a "Form[] Applicable to All Coverage Parts."  *See* RSUI Dec. Page, attached as Ex. "E" to Def.'s Mot.  Each coverage part within the policy, including the Coverage Form and Damage Schedule, must therefore be read *in pari materia* with the limitations set forth in the Scheduled Limit of Liability.

The Court is of the opinion that the terms of the Damage Schedule, Coverage Form, and Scheduled Limit of Liability endorsement, when read together as required by Mississippi law, are unambiguous and in harmony with each other. Read in its entirety, the RSUI policy provides overall occurrence limits of $140,000,000.00, and limits coverage for each individual property to the sub-limits listed on the Statement of Values on file with the company.  Based upon the foregoing, the Court finds that the RSUI contract for insurance is a scheduled policy, and that RSUI's liability with respect to the Brittany Apartments is limited to the $2,458,014.00 individually stated amount identified on the last Statement of Values.

D.   Extent of RSUI's Liability Under the Aspen Policy

Plaintiffs contend that RSUI owes additional payments by virtue of its adoption of the Ordinance or Law endorsement contained in the primary Aspen policy, which provides $2,500,000.00 of coverage.[4]  The endorsement provides

---

[4]Plaintiffs assert that RSUI adopted this endorsement by way of the "Maintenance of Primary Insurance" clause found within the RSUI Coverage Form.

coverage for the following: Coverage A–Coverage For Loss To the Undamaged

Portion of the Building; Coverage B-Demolition Cost Coverage; and Coverage C-

Increased Cost of Construction Coverage.  *See* Aspen Policy at Ordinance or Law

Coverage endorsement (Form CP 04050402), attached as Ex. "C" to Def.'s Mot.

Coverage A states that it "does not increase the Limit of Insurance."  Coverages B

and C do not contain similar stipulations.  The endorsement's schedule lists a

$2,500,000.00 combined limit of insurance for Coverages B and C.

   Plaintiffs assert that RSUI is liable under Coverages B and C for the

demolition and increased costs of construction of the Brittany Apartments, which

are directly related to the application and/or enforcement of ordinances and laws by

the City of Gulfport.  It is unclear from their submissions whether Plaintiffs contend

that the endorsement provides coverage in addition to the limits of the RSUI policy,

or whether it acts as a sub-limit of the overall coverage limits of the RSUI policy.

*See* Br. in Supp. of Pls.' Mot. for Partial Summ. J. at p. 11 ("Since the Ordinance or

Law Coverage endorsement provides for a separate $2,500,000.00 limit for Coverage

B and C, and the RSUI policy contains a limit of liability of $140,000,000.00, the

remainder of Heritage Properties claim, including cost of demolition and the

increased cost of construction, are within the currently available limits under the

RSUI policy."); Br. in Supp. of Pls.' Opp'n to Def.'s Mot. at p. 5 ("...the RSUI policy

contains a $140,000,000.00 limit of liability for any loss and...an additional

$2,500,000.00 in Ordinance or Law Coverage for debris removal and increased cost

of construction....").

To the extent Plaintiffs contend that the Ordinance or Law endorsement provides additional insurance by acting as a sub-limit of the overall policy limits of the RSUI policy, the Fourth Circuit in *First Centrum Corp. v. Landmark*, No. 06-1854, 2007 WL 1800592 (4th Cir. 2007), has provided persuasive guidance.  In *First Centrum*, the insured sought payment on an apartment complex destroyed by fire. Two policies, a primary and an excess one, covered over 150 properties, including the apartment complex at issue, with overall policy limits of $356,126,250.00.  The apartment complex was subject to a $3,421,000.00 scheduled limit.  The primary policy paid its per occurrence limit of $2,500,000.00, and the excess insurer paid a $916,000.00 balance, minus a $5,000.00 deductible.  The insured sought additional payments from the excess insurer under the primary policy's Ordinance or Law endorsement, which provided $2,500,000.00 for demolition required by ordinance or law to insured buildings.

The insured argued that the Ordinance or Law endorsement in the primary policy was a sub-limit of the total insured value of all insured properties, or in other words, a sub-limit of the overall policy limits of $356,126,250.00.  The Fourth Circuit found that this argument "undermine[d] the entire nature of the policies."  *Id*. at 801.  The court held that where the limit of liability for a particular property is scheduled, but the insured seeks additional insurance pursuant to an Ordinance or Law endorsement as a sub-limit of the overall policy limits, the insured inappropriately attempts to "transform[] the policy from a scheduled policy to a blanket policy."  *Id*.  The Fourth Circuit rejected the insured's argument finding

-12-

that, by its unambiguous terms, the insurance policies were scheduled, not blanket, and, therefore, no additional insurance was available to the insured pursuant to the Ordinance or Law endorsement.

Plaintiffs similarly argue that the $2,500,000.00 Ordinance or Law coverage limit is a sub-limit of the overall RSUI policy limit. *See* Rebuttal to Pls.' Mot. for Partial Summ. J. at p. 4 (stating "[e]ven if the Ordinance or Law Coverage is a sublimit of RSUI's limit of liability, it is well within RSUI's limit of $140,000,000.00"). This Court has already determined that the RSUI policy is a scheduled one. *See* Part "C," *supra*. Plaintiffs may not transform the RSUI policy from a scheduled policy into a blanket policy by way of the Ordinance or Law endorsement contained in the underlying Aspen policy.[5]

Moreover, the Court cannot accept Plaintiffs' arguments (*i.e.*, that the Ordinance or Law endorsement provides coverage in addition to the limits of the RSUI policy, or acts as a sub-limit of the overall coverage limits of the RSUI policy) under basic principles of Mississippi contract law. In interpreting a policy of insurance, the Court must enforce terms as written where they are clear and

---

[5]Plaintiffs correctly note that the Ordinance or Law provision in *First Centrum* differs slightly from the one at issue here. Specifically, the *First Centrum* endorsement stated "[t]hese [Ordinance or Law] sub-limits are included in the overall limit of liability and are not an additional amount of insurance." *First Centrum*, 2007 WL 1800592, at * 1. Though no such language appears in Coverages B and C in the Aspen policy, the Court finds this difference immaterial. The Court is of the opinion that the Fourth Circuit in *First Centrum* rejected the insured's argument on two independent grounds: the unambiguous language within the endorsement *and* the fact that the policies were scheduled.

unambiguous.  *See Penthouse Owners Ass'n, Inc. v. Certain Underwriters at Lloyd's, London*, No. 1:07cv568, 2008 WL 2699775, at * 2 (S.D. Miss. July 2, 2008)*(citing Farmland Mutual Insurance Co. v. Scruggs*, 886 So. 2d 714, 717 (Miss. 2004)).

Plaintiffs assert that RSUI has adopted Aspen's Ordinance or Law endorsement through the "Maintenance of Primary Insurance" clause found within its Coverage Form.  That clause states,

> [i]n respect of the perils hereby insured against, this Policy is subject to the same warranties, terms and conditions (except as regards the premium, the amount and limits of liability other than the deductible or self-insurance provision where applicable, and the renewal agreement, if any; and EXCEPT AS OTHERWISE PROVIDED HEREIN) as are contained in or as may be added to the policy(ies) of the primary insurer(s) prior to the happening of a loss for which claim is made hereunder....

RSUI Policy at Excess Physical Damage Coverage Form (Form RSG 91002 0304), attached as Ex. "E" to Def.'s Mot.

There is no serious dispute that, pursuant to the "Maintenance of Primary Insurance" clause, RSUI adopted the "terms and conditions" of the primary Aspen policy.  However, RSUI clearly did not adopt the limits of liability within the primary policy.  *See id.* (stating "this Policy is subject to the same...terms and conditions (except as regards...the amount and limits of liability...and EXCEPT AS OTHERWISE PROVIDED HEREIN....)").  Therefore, liability under Aspen's Ordinance or Law endorsement is excluded by the unambiguous terms of the RSUI policy.

E.     RSUI's Counterclaim

In its Motion, RSUI "requests that the plaintiff's complaint be dismissed and that summary judgment be entered in RSUI's favor providing RSUI with the declaratory relief sought in RSUI's counterclaim."  Def.'s Mot. at 1.  RSUI's Counterclaim seeks a declaration of  "...the parties' rights, status and legal relationship relative to RSUI's policy, that RSUI be awarded its costs and attorneys' fees in this action, and that the complaint of plaintiffs/counter-defendants be dismissed with prejudice, with all costs to be taxed to plaintiffs/counter-defendants."  Def.'s Countercl. ¶ 2.  For the reasons stated elsewhere herein, and based on the submissions, the Court is of the opinion that RSUI is entitled to the declaratory relief requested.  However, the Court is not persuaded that there are sufficient grounds to justify an award of attorney's fees to RSUI.  This last request will be denied.

III.  CONCLUSION

RSUI's occurrence liability on the Brittany Apartments is limited to the amount shown on the latest Statement of Values on file with RSUI, and RSUI has no coverage liability under the Ordinance or Law endorsement found with the Aspen policy.  There is no serious dispute that $2,458,014.00 is the individually stated value for the Brittany Apartments as listed on the last Statement of Values on file with RSUI.  Therefore, RSUI's liability under its policy for damage sustained to the Brittany Apartments is limited to this amount.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion [9] of Plaintiffs Gulfport-Brittany, LLC, and Meredith April Matthews, for Partial Summary Judgment, filed on or about May 12, 2008, in the above captioned cause, should be and is hereby **DENIED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, for the reasons stated more fully herein, the Motion [11] of  RSUI Indemnity Company, for Summary Judgment, filed on or about May 12, 2008, in the above captioned cause, should be and is hereby **GRANTED**.  However, to the extent Defendant requests attorney's fees, such request is denied.  This Civil Action is hereby dismissed, with prejudice.

**SO ORDERED AND ADJUDGED**, this the 7th day of November, 2008.


_s/ Halil Suleyman Ozerden_

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

-16-